IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| QUORUM RADIO PARTNERS, INC., | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 08-3176-CV-S-ODS |
| TODD W. FOWLER, JULIA L. FOWLER, and WILLIAM L. FOWLER, | ) |
| Defendants. | ) |

### ORDER AND OPINION DENYING MOTION TO DISMISS FOR LACK OF JURISDICTION

Pending is Defendant Julia L. Fowler's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. # 6). For the following reasons, Julia Fowler's Motion to Dismiss is DENIED.

### I. BACKGROUND

The Plaintiff in the above-captioned action, Quorum Radio Partners, Inc. ("Quorum"), is a Missouri corporation with its principal place of business in Mountain Grove, Missouri. During the time period relevant to this action, Quorum owned and operated several radio stations, primarily in southwest Missouri. Todd Fowler and Michael Stone served as Quorum's initial Board of Directors. Todd Fowler and his wife, Defendant Julia Fowler, were joint shareholders in Quorum, along with Michael Stone and his wife. Todd Fowler served as Quorum's president from 2002 to January 2005. Todd Fowler hired his father, Defendant William Fowler, to act as general manager from May 2002 to August 2003.

Both parties agree that Julia Fowler never took part in the operation of Quorum beyond her status as shareholder and guarantor of the original financing note for the corporation. Julia Fowler was a citizen and resident of McKinney, Texas at all times

relevant to the allegations in Quorum's complaint.  Julia Fowler never visited the State of Missouri or conducted any business on behalf of Quorum in Missouri.  Julia signed all guaranty contracts and other relevant documents outside of Missouri.

Quorum alleges that in May 2002, Todd, Julia, and William Fowler formed a conspiracy to defraud Quorum.  Quorum held its corporate funds in two Missouri bank accounts.  One bank account was maintained at Union Bank in Mountain Grove, Missouri; the other account was maintained at Bank of America in Mountain Grove, Missouri.  Quorum alleges that Defendants embezzled and diverted tens of thousands of dollars from those two accounts over several years.

Specifically, as to Julia Fowler, Quorum alleges that on several occasions she endorsed and cashed checks written to her by Todd Fowler on Quorum's Missouri accounts.  These checks were represented as payment for "management fees," or "fees" for services rendered to or on behalf of Quorum or as reimbursement for "expenses" incurred by Julia on Quorum's behalf.  Julia Fowler agrees that she never performed any services or incurred any expenses for Quorum.  Additionally, Quorum alleges that one two occasions Julia directly withdrew money from Quorum's Missouri bank accounts using "over the phone" drafts.  Quorum alleges that the money was improperly used to pay for a variety of personal, family, and household expenses and debts.

## II. DISCUSSION

Defendant Julia Fowler moves to dismiss this action on the basis that the Missouri Long-Arm Statute does not confer personal jurisdiction over her, and that even if it does, that the exercise of personal jurisdiction would violate constitutional due process.  A court conducts a two-part inquiry in reviewing a motion to dismiss for lack of personal jurisdiction.  First, the court must determine whether the facts of the case provide jurisdiction pursuant to the state's long-arm statute.  Porter v. Berrall, 293 F.3d 1073, 1075 (8th Cir. 2002).  "It is well settled that the Missouri long arm statute authorizes the exercise of jurisdiction over non-residents 'to the extent permissible

under the due process clause.'" Id. (quoting FDIC v. Malmo, 939 F.2d 535, 537 (8th Cir. 1987)). Therefore, the entire analysis dovetails.

"While it is true that the plaintiff bears the ultimate burden of proof . . . jurisdiction need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing." Dakota Indus. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991). In this case, the Court has elected to decide the issue without holding an evidentiary hearing. "If the district court does not hold a hearing and instead relies on pleadings and affidavits . . . the court must look at the facts in the light most favorable to the nonmoving party and resolve all factual disputes in favor of that party." Id. (citations omitted).

The Missouri long-arm statute gives the state personal jurisdiction over out-of-state defendants who commit tortious acts within the state. Mo. Rev. Stat. § 506.500.1(3). Missouri courts have interpreted this provision of the statute to include extraterritorial acts which produce actionable consequences in Missouri. See Longshore v. Norville, 93 S.W.3d 746 (Mo. Ct. App. 2002). Even "[a] single tortious act may be sufficient to justify a Missouri court's exercise of personal jurisdiction over a nonresident defendant." Institutional Food Marketing Associates, Ltd. v. Golden State Strawberries, 747 F.2d 448, 453 (8th Cir. 1984). The defendant's physical presence in Missouri is not required for Missouri to assert personal jurisdiction over him or her under § 506.500.1(3).

There are two broad categories of personal jurisdiction. "Specific jurisdiction refers to jurisdiction over causes of action that 'arise out of' or 'relate to' a defendant's activities within a state." Lakin v. Prudential Securities, Inc., 348 F.3d 704, 707 (8th Cir. 2003) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)). "General jurisdiction, on the other hand, refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose." Id. (quotation omitted). Quorum does not contend Julia Fowler is subject to general jurisdiction in this state, and therefore relies on her specific contacts with the state to justify suing her here. This requires a showing that

3

> [t]he nonresident defendant's conduct and connection with the forum state . . . be such that [she] should reasonably anticipate being haled into court there, and it is essential that there be some act by which the defendant purposefully avails [her]self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. Purposeful availment means that the defendant's contacts with the forum state must not be random, fortuitous, attenuated, or the result of unilateral activity of a third person or another party.

Guiness Import Co. v. Mark VII Distributors, Inc., 153 F.3d 607, 614 (8th Cir. 1998) (internal citations omitted); see also Dever v. Hentzen Coatings Inc., 380 F.3d 1070, 1073-74 (8th Cir. 2004). The "minimum contacts" analysis required by the Fourteenth Amendment calls for consideration of the following factors: "(1) the nature and quality of contacts with the forum state; (2) the quantity of these contacts; (3) the relationship between the contacts and the cause of action; (4) the interest of the forum state; and (5) the convenience of the parties." Wines v. Lake Havasu Boat Mfg., 846 F.2d40, 42 (8th Cir. 1988). The first three factors are of primary importance. E.g., Austad Co. v. Pennie & Edmonds, 823 F.2d 223, 226 (8th Cir. 1987).

As an initial matter, the complaint in this case alleges facts that Julia Fowler committed extra-territorial tortious acts that yielded consequences in Missouri. Her alleged acts of fraudulently diverting money from a Missouri corporation's Missouri bank accounts satisfies the long-arm statute.

Quorum points to three types of contacts by Julia Fowler that it argues are sufficient to provide the Court with personal jurisdiction in accordance with due process. First, Quorum alleges that twenty-two checks were written on Quorum's Union Bank and Bank of America checking accounts, naming and directed to Julia Fowler as "payee." Julia endorsed each of these checks and used the proceeds for personal use. Second, Quorum alleges that on at least two occasions Julia directly withdrew money from Quorum's Missouri bank accounts using drafts to pay non-corporate credit card debt.[1] Third, Quorum argues that Julia's participation in the conspiracy with Todd

---

[1] Quorum provides evidence of these transactions in the form of an affidavit from Linda P. Barnett, Quorum's Secretary/Treasurer, based on her investigation of Quorum's financial and banking transactions during Todd Fowler's tenure as Quorum's

4

Fowler and William Fowler, co-conspirators who were physically present in Missouri while committing acts in furtherance of the conspiracy, is itself sufficient to satisfy due process.

The Court need not decide whether Julia's passive receipt of checks from Todd Fowler, while outside of Missouri, is sufficient to confer jurisdiction. Nor is it necessary to consider whether a conspiracy theory of personal jurisdiction would be accepted by Missouri courts. Rather, Julia's own alleged conduct of personally initiating the withdrawal of money from Quorum's Missouri bank accounts is itself adequate to provide jurisdiction over her. More specifically, Julia purposefully availed herself of the privilege of conducting activities in Missouri when she drew money from Missouri bank accounts owned by a Missouri corporation. Moreover, Julia's contacts with Missouri are the very basis for the fraud allegations against her and the cause of Quorum's injury.[2] In other words, these contacts are not "random, fortuitous, or attenuated" in their connection with this cause of action. Accordingly, Julia could reasonably anticipate that Quorum would sue her in Missouri, and requiring her to defend this lawsuit in Missouri comports with notions of fairness and substantial justice.

### III. CONCLUSION

For the foregoing reasons, Defendant Julia Fowler's Motion to Dismiss for lack of personal jurisdiction is DENIED.

---

President. Quorum has also provided the Court with copies of the checks and drafts.

[2] Julia Fowler cites to numerous cases for the proposition that "the use of interstate mail, telephone, or banking facilities, standing alone, [is] insufficient to satisfy the requirements of due process." See e.g., T.J. Raney & Sons, Inc. v. Security Sav. & Loan Assoc., 749 F.2d 523, 525 (8th Cir. 1984). However, in those cases, unlike here, such contacts were not the basis for the claim itself.

IT IS SO ORDERED.

                                                    /s/ Ortrie D. Smith
                                                    ORTRIE D. SMITH, JUDGE
DATE: August 1, 2008                       UNITED STATES DISTRICT COURT